CHESTER SASSER v. STATE.

No. A-8872. Sept. 6, 1935.
Rehearing Denied Jan. 21, 1936.
(54 Pac. [2d] 401.)

Williams, Cowan & Benedum and T. J. Hinshaw, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DOYLE, J.   Plaintiff in error, Chester Sasser, was convicted in district court of Cleveland county on the charge of robbery with firearms, and in accordance with the verdict of the jury he was on September 15, 1934, sentenced to imprisonment in the penitentiary for a term of five years.

The jury, after rendering their verdict, filed a report with a recommendation to the court that the defendant be paroled.

The information charged Chester Sasser, Robert Redwine, and Leo Cox jointly with having robbed John Shaw and Mrs. Shaw, by the use of a pistol, of $9 in money and other personal property.

The defendants Redwine and Cox each entered a plea of guilty and were serving their terms when this case was tried.

The only question involved in this appeal is the sufficiency of the evidence to sustain the verdict and judgment.

Mr. and Mrs. John Shaw owned and operated a small store about five miles east of the town of Noble and about

eight miles north of Lexington, commonly known as the Maguire store. On Sunday evening July 15, 1934, about dusk, three men in a Buick two-seated sedan drove up from the east, circled around, and stopped the car in front of the store. It appears from the testimony of Mr. and Mrs. Shaw that they were sitting on the porch. Redwine and Cox, sitting on the front seat, left the car; the other man was laying on the back seat. Cox said they wanted ten gallons of gas. Mrs. Shaw put ten gallons in the tank; then they said they wanted some oil. Mr. Shaw brought the oil and told Mrs. Shaw to get the lantern. Cox said, "You don't need that," and he put in the oil; then they entered the store and bought some canned meat, crackers and cookies and a couple of cans of tobacco. While Mrs. Shaw was figuring their bill, Cox said to Mr. Shaw, "Step over there by that woman." He was holding a gun in his hand. Mr. Shaw held up his hands and stood by his wife. Redwine went to the cash register and took the money, about $10. About that time the car motor started. Cox searched Mr. Shaw. They then took the goods they had pretended to buy and backed out of the store. They do not identify the plaintiff in error. After the robbery the car was driven east. Immediately after the robbery a report of the same was telephoned to the sheriff's office.

The only question for the jury to pass upon was whether plaintiff in error was present and participated in the commission of the crime.

Plaintiff in error operated a filling station about three miles north of Lexington and about six miles south of the Shaw store. Redwine and Cox had been staying with him for more than a week before this robbery. The day before the robbery Sasser procured a thirty-eight Smith and Wesson pistol from a man in Lexington. Red-

wine was with him and bought cartridges for the gun at a hardware store in Lexington. The three defendants traveled together from some time Sunday morning until about sundown that day, when they parked the car a little less than a mile east of the Shaw store.

Doc Cline testified that he lives in Tribbey and has known Chester Sasser and Leo Cox for more than ten years; that together with Robert Redwine they came to his home about 10 o'clock Sunday morning July 15, 1934, had dinner there that day and left his place 10 minutes after six that evening.

Willie Garber testified that he lives a quarter of a mile east of the Maguire store and had known Chester Sasser eight or nine years; was walking over to Liberty Church, and about three-quarters of a mile east of the store a Buick sedan facing west was parked on the north side of the road; three men were in the car; one he recognized as Chester Sasser. It was just about good sundown; as he passed, Chester called to him, and asked for the makings of a cigarette; that he stopped, handed him his tobacco sack and waited until he rolled a cigarette; that he did not recognize the other men.

Two other witnesses testified that a little after sundown they passed a Buick sedan, with three men in it, parked on the north side of the road about three-fourths of a mile east of the Maguire store.

Leo Cox, codefendant, testified that after leaving Doc Cline's they drove to three miles north of Lexington, then east to Willowview, then north, then west, and stopped about a mile east of the Maguire store for about an hour. Asked what conversation he had there with Chester Sasser, he answered, "He wasn't in the car at that time. Robert

Redwine and a fellow from Seminole was there in the car." He was then asked, "I will ask you to state if you didn't testify on the preliminary hearing in this case that Chester Sasser was there in the car at that time," and answered, "I did." Objection sustained.

Bud Jennings, sheriff, testified that Monday evening after the robbery he had a conversation with Sasser in the county jail and told him he had a report on him of riding around in a stolen Chevrolet coupe, and he said, "No I haven't been in any Chevrolet coupe, I can prove that by Leo Cox and Robert Redwine, I was with them all day Sunday and went with them to Doc Cline's"; that when they drove back, they let him out at the Lone Star schoolhouse about 9 or 9:30 that night. Then he told him about persons seeing him parked near the Maguire store and about the highjacking, and he said, "We parked out there, but we didn't highjack the store."

Ivan Kennedy, undersheriff, testified that he arrested Chester Sasser at his home three miles north of Lexington, and had a conversation with him Monday evening in the jail in the presence of several other persons, and Sasser said he had been with Leo Cox and Robert Redwine all day; that they had been staying at his place and drove over to Doc Cline's and returned late in the evening and come in on the road over east of Maguire. That they let him out at the Lone Star school between 9 and 10 o'clock. That four days later in the jail, several others being present talking with Sasser, some one told him about getting the tag number of the car used at the highjacking, and Sasser said, "There was no tag on it when we were there at Maguire's store that night," that they had taken the tag off the car.

Two other witnesses testified they were present and heard plaintiff in error make this statement.

Ivan Ross testified that he was at the Lone Star schoolhouse that evening and between 9 and 9:30 Chester Sasser asked him to take him home and he told him he could not, that he had to take his folks home.

Frank Claunch testified that he was in the Lone Star school and Chester Sasser motioned to him to come out, then Chester asked him if Pauline, his wife, was there, and he told him he had not seen her. He would place the time about 9 o'clock.

At the close of the evidence a motion was made by the defense for a directed verdict of acquittal on the ground that the evidence was insufficient to warrant a conviction, which was denied.

Plaintiff in error did not take the witness stand, and there was no evidence offered on his part.

It is argued that the testimony of Cox, codefendant, shows that plaintiff in error was not the man in the car at the time of the robbery, and that the testimony of two witnesses called by the state shows that he was six miles from the store at the time of the robbery.

The jury evidently discredited the testimony of the codefendant witness Cox.

The evidence connecting plaintiff in error with the commission of the robbery was mainly circumstantial. The test by which to determine the sufficiency of circumstantial evidence in a criminal prosecution is whether the facts and circumstances tending to connect the defendant with the crime charged are of such conclusive nature as to exclude to a moral certainty every rational hypothesis

388

except that of guilt, and the jury in this case were so instructed by the court. It is the province of the jury to determine the facts and circumstances surrounding the commission of the crime charged, and if, assuming as proved the facts the evidence tends to establish, they can be accounted for upon no rational theory which does not include the guilt of the defendant, the proof cannot be said to have failed. Accepting, therefore, as true the testimony showing preparation by procuring the pistol the day before in company with Redwine, codefendant, who purchased the ammunition. The fact that the three defendants were together that day and the identification of plaintiff in error in the car with his codefendants near the scene of the robbery a brief time before its commission, considered in relation to the undisputed facts and circumstances in evidence and plaintiff in error's voluntary admissions to the officers made shortly after the robbery, we think the issue was for the jury and not for the court; therefore the court did not err in refusing to advise the jury to return a verdict of acquittal.

Upon the whole case, we find that plaintiff in error had a fair and impartial trial, and that the evidence amply supports the verdict. The judgment appealed from is therefore affirmed.

DAVENPORT, P. J., and EDWARDS, J., concur.